EL PUEBLO DE PUERTO RICO en interés del menor S.G.S., querellado y apelante.

*Número:* AC-89-323        *Resuelto:* 6 de marzo de 1991

*Melvin W. Robles Sanabria,* abogado del menor apelante; *Jorge E. Pérez Díaz, Procurador General, Norma Cotti Cruz, Subprocuradora General, Marjorie Rivera Rodríguez* y *Blanca A. Díaz Segarra, Procuradoras Generales Auxiliares,* abogados de El Pueblo.

El Juez Asociado Señor Negrón García emitió la opinión del Tribunal.

I

Al menor S.G.S. se le imputó una infracción al Art. 158 del Código Penal, 33 L.P.R.A. sec. 4241, a saber, negarse a reconocer un hijo (B.J.) producto de las relaciones con la menor Y.R.R.

En lo subsiguiente, dicho menor renunció a la vista sobre determinación de causa probable. Posteriormente, el Procurador de Menores solicitó que, en interés del menor y de la justicia, se ordenase un examen serológico. Las pruebas arrojaron un resultado de *95.11% de probabilidad* relativa de paternidad y, por ende, que no podía excluírsele.

En la vista adjudicativa, el Procurador presentó el testimonio de Y.R.R. y, además, sometió su declaración jurada de 25 de mayo de 1983. También quedó en evidencia el informe sobre examen serológico. Por último, el juez observó los rasgos físicos del bebé e hizo constar parecidos en la frente, nariz, boca, color y cabello.

En virtud de esta prueba, el tribunal de instancia declaró que B.J. era producto de las relaciones entre los jóvenes y, en consecuencia, declaró al menor S.G.S. incurso. Ordenó la correspondiente inscripción en el Registro Demográfico. Esta orden fue objetada por la defensa, quien sin éxito *invocó* la confidencialidad de los procesos ante el Tribunal de Menores. El tribunal de instancia razonó que la confidencialidad del expediente tenía que ceder ante el derecho de la criatura nacida, que de otra forma quedaría sin protección. *Por considerar a S.G.S. insolvente, no le fijó pensión.*

Culminada la vista adjudicativa, de inmediato se celebró la dispositiva. Se estipuló el informe social del menor S.G.S. preparado por el técnico de relaciones de familia. A la luz del mismo, el tribunal le impuso seis (6) meses en libertad condicional con la consabida determinación sobre custodia y supervisión.

## II

Inconforme, en su apelación S.G.S. cuestiona la jurisdicción del Tribunal de Menores; la creación de faltas "por analogía"; que se sustituyera un proceso regular filiatorio por el sumario del Art. 158 del Código Penal, *supra*, cuyo único objetivo es la obtención de una pensión alimentaria; que se adjudicara el caso sin traer a sus padres (abuelos), y que se ordenara la inscripción filiatoria, dando así a la publicidad una resolución de un Tribunal de Menores en contravención a la confidencialidad establecida en la ley.

Específicamente, sobre la jurisdicción especial del Tribunal de Menores, nos expone S.G.S. que este tipo de comportamiento indisciplinado está excluido de su intervención. Aduce que dicho foro no fue creado para dilucidar cuestiones filiatorias.

Nos argumenta que el propósito primordial del Art. 158 del Código Penal, *supra*, es la imposición de una pensión alimentaria. Ello requiere un padre que sin excusa legal niegue alimentos a un hijo menor de edad. Explica, además, que esa situación delictiva sólo se configura entre adultos, pues los menores usualmente no trabajan ni tienen medios de fortuna. Por esta razón era indispensable traer al proceso a sus padres, pues ellos serían los que en última instancia hubiesen estado obligados a alimentar. Bajo esa premisa afirma la imposibilidad de tal acumulación, ya que el Tribunal de Menores carece de jurisdicción sobre adultos. En consecuencia, continúa exponiendo, al no poderse lograr ese propósito —imposición de una pensión— el proceso en el Tribunal de Menores se torna inoperante. El foro apropiado, con jurisdicción sobre todas las partes y apto para resolver de manera completa el asunto y conceder todos los remedios, es el civil.

Finalmente arguye que la Ley de Menores de Puerto Rico prohíbe dar a la publicidad el expediente de un menor o de las resoluciones de los procesos. A juicio suyo no procede sostener una excepción en este caso ante la realidad de que existe otro foro o procedimiento más adecuado.

## III

Aunque los argumentos del apelante S.G.S. son ingeniosos, no tiene razón. La premisa básica en que construye su tesis es errónea. Veamos.

■ Distinto a su enfoque, el Art. 4 de la Ley de Menores de Puerto Rico —Ley Núm. 88 de 9 de julio de 1986, según enmendada, 34 L.P.R.A. sec. 2204— visualiza una cobertura amplia. Prescribe que el *"Tribunal tendrá autoridad para conocer de:* (a) Todo caso en que se impute a un menor conducta que constituya *falta* . . .". (Énfasis suplido y en el original.) 34 L.P.R.A. sec. 2204.

■ Ya antes su Art. 3(i) definía "falta" como la *"infracción o tentativa de infracción por un menor de las leyes penales* . . .". (Énfasis suplido.) 34 L.P.R.A. sec. 2203(i). Por otro lado, no se cuestiona persuasivamente que el abandono y descuido de menores es un delito establecido en el Art. 158 del Código Penal, *supra*. Apareja una pena de reclusión o multa característica de los delitos menos graves.

■ Fácil es advertir que estamos ante conducta susceptible de ser imputada a un menor de edad conforme dispone la Ley de Menores de Puerto Rico. Este estatuto sólo excluye del concepto "falta" los casos de asesinato en virtud de la Ley Núm. 34 de 19 de junio de 1987, y ello con el fin de que los imputados sean juzgados como adultos. Carece, pues, de fundamento la propuesta del apelante S.G.S. de que los menores no cometen la falta estatuida en el Art. 158 del Código Penal, *supra*. Ni en el ámbito jurídico ni en el físico estamos ante un delito que sólo pueden cometer los adultos.

■ Lo expuesto no niega que el Tribunal de Menores es especializado. Sólo reconoce que esa característica no implica carencia de facultad ni incapacidad para dilucidar y adjudicar cabalmente todos los aspectos relativos a la filiación y alimentos

según el Art. 158 del Código Penal, *supra*. De hecho, la facultad del Tribunal de Menores es más amplia que la del Tribunal de Distrito, pues de ordinario aquél dilucida faltas equivalentes no sólo a delitos menos graves, sino graves.

Tampoco existe diferencia procesal alguna que inhiba a ese foro. La contención del apelante S.G.S. respecto a la imposibilidad de traer al Tribunal de Menores —como partes indispensables— a sus padres, abuelos de la criatura, también existe en una causa criminal en el Tribunal de Distrito. Allí tampoco podrían asimilarse, pues los abuelos no serían sujetos de responsabilidad criminal.[1]

■ En *Pol Sella v. Lugo Christian*, 107 D.P.R. 540, 546 (1978), dijimos:

> El Art. 263 del Código Penal sufrió una transformación radical por [la] Ley Núm. 10 de 16 de mayo, 1966 (33 L.P.R.A. sec. 991) que lo convirtió en precepto de carácter mixto penal y civil. . . . [L]a modificación de 1966 amplió el ámbito y el propósito del citado artículo incorporando un procedimiento en el cual la paternidad probada crea un nuevo estado civil del menor y una filiación que se anota en el Registro Demográfico. Por el inciso (h) del citado artículo se concedió al Tribunal de distrito *jurisdicción concurrente* con el Tribunal Superior "a los efectos de determinar la paternidad"; y por el inciso (f) se *equiparó el procedimiento*, en el eficaz ejercicio de esa *jurisdicción, al de la tradicional acción civil filiatoria* . . . . (Énfasis suplido.)

■ Estos pronunciamientos fueron reafirmados en *Santiago Ojeda v. Cruz Maldonado*, 109 D.P.R. 143, 146 (1979). Aplican y cubren la situación ante el Tribunal de Menores, el cual está facultado para dilucidar una falta constitutiva del Art. 158 del Código Penal, *supra*.

Finalmente, el planteamiento de confidencialidad se exalta frente a la búsqueda judicial de un derecho de estirpe constitu-

---

[1] *"La responsabilidad* es la obligación de estar a las consecuencias de los propios actos, de <<responder>> de ellos. La responsabilidad presupone . . . que el sujeto ha cometido un delito con *todos* sus elementos . . .". (Énfasis en el original.) J.M. Rodríguez Devesa, *Derecho Penal Español: Parte General*, 8va ed., Madrid, J.M.R.D., 1981, pág. 413.

cional. *Ocasio v. Díaz*, 88 D.P.R. 676 (1963). Y es que la secretividad de los expedientes de los menores (documentos y otras providencias) persigue evitar exponer a la luz pública sus identidades. De lo contrario podrían afectarse las posibilidades de rehabilitación. La secretividad reduce al mínimo el estigma popular que conlleva todo acto delictivo. *Morales Torres v. Tribunal Superior*, 99 D.P.R. 459, 462–463 (1970).

Ahora bien, aunque de importancia, la confidencialidad no es un derecho absoluto. Cuando adviene en conflicto con otros intereses individuales de mayor valía, nos regimos por "un balance razonable entre los intereses opuestos . . .". *Morales Torres v. Tribunal Superior*, supra, pág. 463. Véanse, además: D. Nevares-Muñiz, *Derecho de Menores*, Hato Rey, Inst. para el Desarrollo del Derecho, 1987, Sec. 1.5.1, pág. 11 n. 20; Regla 46(E) de Evidencia, 32 L.P.R.A. Ap. IV.

Coincidimos con el foro de instancia de que no estamos ante "un interés vano o caprichoso". Todo lo contrario. El alto interés público que reviste una determinación tan trascendental —estado filiatorio— supera en exceso el interés que pudiera tener el menor S.G.S. en que el Director del Registro Demográfico no advenga en conocimiento del resultado de un procedimiento ante el Tribunal de Menores. Aparte de ello, en el orden social *per se* ese trámite no lo expone al odio y desprecio público. La divulgación es limitada, indispensable y necesaria.

Por los fundamentos expuestos, *se dictará sentencia confirmatoria. Subsiste como único decreto el pronunciamiento de paternidad.*

Los Jueces Asociados Señores Hernández Denton y Alonso Alonso concurren con el resultado sin opinión escrita. El Juez Presidente Señor Pons Núñez no intervino.